UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ALAN KAHN, on behalf of himself and all others similarly situated, | ) ) ) | CASE NUMBER: |
| Plaintiff, | ) ) | |
| v | ) ) ) | **1:06-cv-1008** |
| MORTON INDUSTRIAL GROUP, INC , WILLIAM D. MORTON, MARK W. MEALY, FRED W BROLING, BRAZOS PRIVATE EQUITY PARTNERS, LLC, MMC PRECISION HOLDINGS CORP and MMC PRECISION MERGER CORP., | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## CONSENT TO REMOVAL

Defendants Morton Industrial Group, Inc., William D. Morton, Mark W Mealy, and Fred W. Broling, by and through their undersigned counsel, hereby consent to the removal of the above-captioned action by C0-Defendant Brazos Private Equity Partners, LLC, MMC Precision Holdings Corp., and MMC Precision Merger Corp. to the United State District Court for the Northern District of Georgia, Atlanta Division

This 26th day of April, 2006.

1

CHILIVIS, COCHRAN, LARKINS &
BEVER LLP

By:

J D  Dalbey
Georgia Bar No.  003150
Nickolas P T. Chilivis
Georgia Bar No  124799

3127 Maple Drive, N.E.
Atlanta, Georgia  30305
(404) 233-4171
(404) 261-2842 (fax)
email. jddalbey@cclblaw com

Attorneys for all Defendants

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
03/31/2006
Log Number 511045473

**TO:**   Adam Nelson
Weil Gotshal & Manges
200 Crescent Court, Suite 300
Dallas, TX, 75201

**RE:**   **Process Served in Georgia**

**FOR:**   MMC Precision Merger Corp  (Domestic State. GA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Alan Kahn, On Behalf of Himself and All Others Similarly Situated, Pltf  vs  Morton Industrial Group, Inc , et al , Including MMC Precision Merger Corp , Dfts |
| **DOCUMENT(S) SERVED:** | Summons, Class Action Complaint |
| **COURT/AGENCY.** | Fulton County Superior Court, Georgia, GA<br>Case # 2006CV114628 |
| **NATURE OF ACTION** | Summons and Complaint - Alleged deceptive buyout plan, etc. - Unspecified amount. |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Atlanta, GA |
| **DATE AND HOUR OF SERVICE:** | By Messenger on 03/30/2006 at 14 30 |
| **APPEARANCE OR ANSWER DUE:** | 30 Days |
| **ATTORNEY(S) / SENDER(S):** | Martin D  Chitwood<br>Chitwood Harley Harnes LLP<br>1230 Peachtree Street, NE<br>Promenade II, Suite 2300<br>Atlanta, GA, 30309 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex Priorty Overnight  790869769520<br>Fax Transmittal, Mark D Kaufman 404-853-8806 |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | C T Corporation System<br>Cindy Zidick<br>1201 Peachtree Street,N E<br>Atlanta, GA, 30361<br>404-888-6488 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages  the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of the package only  not of its contents.

ORIGINAL

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

ALAN KAHN, on behalf of himself
and all others similarly
situated,

CIVIL ACTION,
NUMBER 2006 C V 114628

**PLAINTIFF**

**VS**

MMC Precision Merger Corp.
c/o its registered agent
CT Corporation System

1201 Peachtree Street, NE
Atlanta, GA 30361

**DEFENDANT**

### SUMMONS

**TO THE ABOVE NAMED DEFENDANT(S).**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Martin D. Chitwood
Chitwood Harley Harnes LLP
1230 Peachtree Street, NE
Promenade II, Suite 2300
Atlanta, GA 30309

an answer to the complaint which is herewith served upon you, within 30 days after the service of this summons upon you, exclusive of the day of service  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint

This _027_ day of _March_ , 20 _06_

Juanita Hicks
Clerk of Superior Court

By_____
Deputy Clerk

To Defendant upon whom this petition is served

This copy of complaint and Summons was served upon you _____ 20_____

_____ Deputy Sheriff

Instruction  Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

6009-082-685



**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

BXV / ALL
Transmittal Number: 4416350
Date Processed: 03/30/2006

| Primary Contact | Daryl Lindeman<br>Morton Industrial Group, Inc<br>1021 Birchwood<br>Morton, IL 61550 |
|---|---|

| | |
|---|---|
| **Entity:** | Morton Industrial Group, Inc<br>Entity ID Number 1845388 |
| **Entity Served:** | Morton Industrial Group, Inc |
| **Title of Action** | Alan Kahn vs Morton Industrial Group, Inc |
| **Document(s) Type** | Summons/Complaint |
| **Nature of Action.** | Contract |
| **Court·** | Superior Court of Fulton County, Georgia |
| **Case Number:** | 2006CV114628 |
| **Jurisdiction Served.** | Georgia |
| **Date Served on CSC** | 03/30/2006 |
| **Answer or Appearance Due** | 30 Days |
| **Originally Served On** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney** | Martin D Chitwood<br>404-873-3900 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s)  It does not constitute a legal opinion  The recipient is responsible for interpreting the documents and taking appropriate action

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo com

ORIGINAL

## IN THE SUPERIOR COURT OF FULTON COUNTY

### STATE OF GEORGIA

ALAN KAHN, on behalf of himself
and all others similarly
situated,

CIVIL ACTION,
NUMBER 2006 CV 114628

**PLAINTIFF**

**VS**

Mark W. Mealy
c/o Morton Industrial Group, INc.
1021 W. Birchwood Street

Morton, IL 61550
c/o its registered agent
Prentice-Hall Corp. **DEFENDANT**

### SUMMONS

TO THE ABOVE NAMED DEFENDANT(S).

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is

Martin D. Chitwood
Chitwood Harley Harnes LLP
1230 Peachtree Street, NE
Promenade II, Suite 2300
Atlanta, GA 30309

an answer to the complaint which is herewith served upon you, within 30 days after the service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint

This ___27___ day of ___March___ , 20 _06_

Juanita Hicks
Clerk of Superior Court

By _____
Deputy Clerk

*To Defendant upon whom this petition is served*

This copy of complaint and Summons was served upon you _____ 20_____

_____ Deputy Sheriff

Instruction   Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

6009-082-685



**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| ALAN KAHN, On Behalf of Himself and All Others Similarly Situated, | No. 2006CV-114628 |
| Plaintiff, | |
| vs. | |
| MORTON INDUSTRIAL GROUP, INC., WILLIAM D. MORTON, MARK W. MEALY, FRED. W. BROLING, BRAZOS PRIVATE EQUITY PARTNERS, LLC, MMC PRECISION HOLDINGS CORP. and MMC PRECISION MERGER CORP., | |
| Defendants. | |



FILED IN OFFICE

MAR 2 7 2006

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

## CLASS ACTION COMPLAINT

Plaintiff, by his attorneys, by his complaint against defendants, alleges upon personal knowledge with respect to plaintiff and plaintiff's actions as upon information and belief based, *inter alia*, upon the investigation of counsel, as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this action individually and as a class action on behalf of the public shareholders of Morton Industrial Group, Inc ("Morton" or the "Company") to enjoin a self-dealing, fraudulent and deceptive buyout plan (the "Going Private Plan") by which a group (the "Buyout Group") lead by defendants William D Morton ("William Morton"), Mark W. Mealy ("Mark Mealy") and Brazos Private Equity Partners, LLC ("Brazos"), along with other members of the Company's management, propose to cash out the public shareholders of Morton for $10 cash per share through a merger transaction (the "Merger"). As set forth herein, the $10 cash per share

proposed in the Going-Private Plan is an unfair price, is the result of unfair dealing, and is being presented to Morton's public shareholders through fraudulent and deceptive means.

## PARTIES

2.    Plaintiff Alan Kahn is and has been a shareholder of Morton since Morton became a publicly held company in January 1998.

3    Defendant Morton is a Georgia corporation headquartered at 1021 West Birchwood Street, Morton, Illinois 61550.   Morton manufactures metal components and subassemblies for construction, industrial, and agricultural original equipment manufacturers ("OEM's"), primarily Deere & Co. ("Deere") and Caterpillar Inc ("Caterpillar"), who together generate 91% of Morton's net sales.

4.    Defendant William Morton has been Morton's Chief Executive Officer, President, and Chairman of the Company's board of directors since Morton became a publicly held company in January 1998   William Morton is the record owner of 1,353,990 shares, or 27.2% of the Company's issued and outstanding common stock.   However, William Morton is the beneficial (but not record owner) of an additional 1,843,552 shares, or 37% of the Company's common stock, by virtue of various voting agreements and shareholder agreements with all other officers and directors of Morton, including defendants Fred Broling and Mark Mealy.   As a result, William Morton owns and/or controls, in the aggregate, 64 2% of the Company's issued and outstanding shares of common stock.   Unlike the Company's public shareholders, William Morton will continue to be employed by Morton and will continue to own an equity interest in Morton following completion of the Merger.

5    Defendant Mark Mealy has been a director of Morton since Morton became a publicly held company in January 1998   Mealy owns 1,191,479 shares of Morton common stock.   However, 170,801 of those shares are subject to a Voting Agreement between Mark

2

Mealy and William Morton that provide beneficial ownership and other rights to William Morton, including an irrevocable proxy whereby William Morton has the power to vote those shares "on all matters presented to [Morton] shareholders for a vote." The remaining 1,021,678 shares owned by Mealy are subject to a Shareholders Agreement between Mark Mealy and William Morton that similarly provide beneficial ownership and other rights to William Morton, including a "forced purchase option" whereby William Morton may elect to force Mark Mealy to purchase all shares owned by William Morton "and his affiliates" for the price offered in the Going-Private Plan (over $33 million cash) in the event that Mark Mealy did not vote in favor of the Merger. Unlike the Company's public shareholders, Mark Mealy will continue to own an equity interest in Morton following consummation of the Merger

6.  Defendant Fred Brohng has been a director of Morton since Morton became a publicly held company in January 1998. Fred Browlng owns 245,007 shares of Morton common stock. However, all of those shares are subject to a Voting Agreement between Fred Brohng and William Morton that provide beneficial ownership and other rights to William Morton, including an irrevocable proxy whereby William Morton has the power to vote those shares "on all matters presented to [Morton] shareholders for a vote."

7  Defendant Brazos is a private equity firm headquartered at 100 Crescent Court, Suite 1777, Dallas Texas 75201. Brazos describes itself its marketing materials as a firm that "specializes in leveraged acquisitions and recapitalizations of middle-market companies that offer the potential for substantial capital appreciation "

8.  Defendant MMC Precision Holdings Corp. is a Delaware Corporation controlled by Brazos.

9.  Defendant MMC Precision Merger Corp is a Georgia Corporation and a wholly owned subsidiary of MMC Precision Holdings Corp.

3

10. Defendants William Morton, Fred Broling and Mark Mealy (collectively, the "Individual Defendants") are in a fiduciary relationship with plaintiff and the other public stockholders of Morton and owe them the highest obligations of good faith and fair dealing.

## JURISDICTION AND VENUE

11. This action is brought pursuant to O C.G A. §9-11-23. This Court has jurisdiction over each defendant.

12. Morton is a Georgia corporation. Venue is proper in this Court.

## CLASS ACTION ALLEGATIONS

13. Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 4·32-1 of the Rules of this Court, on behalf of all holders of Morton Class A common stock who are being and will be harmed by defendants' actions described below (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendants

14 This action is properly maintainable as a class action.

15. The Class is so numerous that joinder of all members is impracticable. According to Morton's most recent SEC filings, there are 1,375,059 shares of Morton common stock that are not owned or controlled by defendants or any other of the Company's officers and directors. The actual number of public shareholders of Morton will ascertained through discovery.

16. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include the following

    a.    whether defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to plaintiff and the other members of the Class in connection with the Going-Private Plan;

4

b.    whether the Individual Defendants are engaging in self-dealing in connection with the Going-Private Plan;

- c —    whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of plaintiff and the other members of the Class in connection with the Going-Private Plan;

d.    whether the Individual Defendants are unjustly enriching themselves and other insiders or affiliates of Morton;

e.    whether defendants have breached any of their other fiduciary duties to plaintiff and the other members of the Class in connection with the Going-Private Plan, including the duties of good faith, diligence, honesty and fair dealing;

f.    whether the Individual Defendants have acted by fraudulent and deceptive means in connection with the vote to approve the Merger;

g.    whether the defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

h    whether plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

17    Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

18    Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

19    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

20.    Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

21.    Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

SUBSTANTIVE ALLEGATIONS

**The Individual Defendants' 10-Year Plan**

22.    On March 22, 2006, the Individual Defendants caused Morton to enter into an Agreement and Plan of Merger (the "Merger Agreement") with MMC Precision Holdings Corp and MMC Precision Merger Corp., whereby the Individual Defendants contractually bound the Company to proceed with the Merger at $10 per share for all Morton shareholders other than the Buyout Group, subject to approval by shareholders other than the Buyout Group.

23.    The Buyout Group consists of the following individuals and entities, each of which will continue to own an equity interest in Morton following completion of the Merger.

    a.    Brazos and its MMC Precision Holdings Corp. and MMC Precision Merger Corp. affiliates, who are financing the Going Private Plan;

    b.    Defendant William Morton;

    c.    Defendant Mark Mealy;

    d    Daryl Lindemann, Morton's Senior Vice President of Finance;

    e    Brian Geiger, Morton's Vice President of Operations, and

    f.    Brian Doolittle, Morton's Vice President of Sales and Engineering.

6

24.     In addition, all members of Morton's management team, whether or not included in the Buyout Group, will continue to be employed by the Company following the completion of the Merger.

25.     On March 23, 2006, Morton issued a press release to publicly announce the Going-Private Plan and resulting Merger Agreement.

26.     The Going-Private Plan is the exit strategy of 10-year plan whereby William Morton has exercised majority control of the Company through powers granted to him under a series of Voting Agreements and Shareholder Agreements entered into with every current and former officer of Morton and its subsidiaries, and each director of Morton  The Shareholder Agreements and Voting Agreements were entered into on January 20, 1998 in connection with a series of corporate reorganizations whereby Morton would emerge as a publicly held company. The agreements had a ten-year term, and will expire on January 20, 2008.  Upon expiration of the agreements, William Morton would lose majority control of the Company.  The Going-Private Plan was devised so that, while William Morton still had control of the Company, Morton could be taken private on terms favorable to him and other Company insiders of the Buyout Group.

27     As Company insiders will continue to own an equity interest in Morton following the completion of the Merger, these individuals are economically motivated to pay as little as possible to the public shareholders of Morton being cashed out in the Merger, and are likewise motivated to ensure that the Merger will be completed prior to William Morton losing control of the Company in early 2008.

28.     The Merger Agreement that has resulted from this exit strategy severely undervalues the Company, is timed to artificially cap the price of Morton common stock just as

7

Morton's two main customers are increasing forecasts for Morton's products, and is designed to coerce shareholders to vote in favor the Merger through fraudulent and deceptive practices.

**The $10 Per Share Price Is Unfair, and Is Designed to Cap the Market Price of Morton Stock**

29.    Defendants timed the Going-Private Plan and the announcement of the Merger Agreement to cap the price of Morton common stock just as the Company is on the verge of achieving increased sales and earnings as Catepillar and Deere are forecasting orders for Morton's products

30.    For instance, Morton disclosed in its 2004 Annual Report, filed with the SEC on March 29, 2005, that:

> *Caterpillar and Deere continue to forecast greater orders* for fabricated parts supplied by [Morton].  We believe that this demand is being fueled by the improved economic conditions in the United States.  The Company has responded by hiring additional manpower, adding capital equipment as necessary and increasing the flow of purchased raw materials[ ]  (Emphasis added.)

31    The optimistic outlook for Morton has been confirmed throughout 2005, as Morton most recently disclosed in its third quarter 2005 Quarterly Report filed with the SEC on November 15, 2005 that:

> *Caterpillar Inc. and Deere & Co. are both forecasting greater orders for fabricated parts supplied by Morton Industrial Group, Inc. for the remainder of 2005 and beyond.*  We believe that this demand is being fueled by the improved economic conditions in the United States.  The Company has responded by hiring additional manpower, adding capital equipment as necessary and increasing the flow of purchased raw materials in a sometimes difficult steel market.  (Emphasis added.)

32    While achieving increased sales and earnings through increased orders from Caterpillar and Deere, Morton has also been able to insulate itself from rising raw material costs by passing those increased costs through to Caterpillar and Deere.

Moreover, steel prices have recently stabilized and decreased, as Morton disclosed in its

third quarter 2005 Quarterly Report.

> The U.S. steel industry has restructured, consolidated and is challenged to meet
> growing domestic and international demand.    The steel industry has been
> impacted by China's growing consumption of scrap steel and coke, a raw material
> used in processing steel. Cosmetically sensitive sheet steel, our core commodity,
> has correspondingly seen inflationary pricing; *however, most inflationary steel
> pricing becomes the responsibility of the Company's customers.*    The
> inflationary price trends have reached what appears to be their highest levels and
> *steel prices have started to decrease during the third quarter of 2005 and are
> expected to stabilize during the fourth quarter of 2005.* (Emphasis added.)

33.    Indeed, Caterpillar issued a press release on January 26, 2006 to announce 2005

fourth quarter and year end results, which included sales and revenues that were "all-time

records for any quarter in Caterpillar history." Caterpillar reported "unprecedented customer

demand in 2005," and that "2006 should be another year of excellent growth for Caterpillar...

Most of the industries we serve are strong, and the fundamental economic picture remains

positive."

34.    Likewise, Deere issued a press release on February 14, 2006 to announce its first

quarter fiscal year 1996 results, which included a 7% increase in net sales  Deere also disclosed

bullish forecasts for increased sales, including that "[s]ales of John Deere commercial and

consumer equipment are forecast to be up 10 to 12 percent for the year "

35.    Defendants, however, have sought to cap the price of Morton common stock and

pay as low a price as possible for the valuable benefits of 100% ownership of the Company by

announcing its $10 per share low-ball offer just days before Morton was scheduled to disclose its

2005 year end earnings.  The $10 per share to be paid to Morton's public shareholders through

the Merger is unfair and inadequate because, among other things, the intrinsic value of Morton

common stock is materially in excess of the amount offered, given Morton's prospects for future

growth and earnings.

9

**Defendants Are Coercing Shareholders to Vote in Favor of the Merger Through Fraudulent and Deceptive Means**

36.    In addition to the woefully unfair price, the Merger is the result of a flawed process whereby the Individual Defendants have engaged in self-dealing and are seeking to coerce Morton's public shareholders to vote in favor of the Merger through fraudulent and deceptive means, including issuing public statements that falsely represent that the Merger Agreement was approved by unconflicted directors of Morton, when, in fact there are no unconflicted directors of Morton.

37    The three Individual Defendants that comprise Morton's board of directors each suffer from disabling conflicts of interest that prevent them, individually or as a group, to properly evaluate the Going Private Plan and fulfill the fiduciary duties they owe to the Company's public shareholders.    Each of the Individual Defendants is conflicted by virtue of their roles as members of the Buyout Group (and therefore not participating in the proposed cashout of Morton shareholders for $10 per share) and/or pre-existing voting and shareholder agreements whereby these defendants have granted irrevocable proxies to William Morton in exchange for becoming investors in and directors of Morton in January 1998.

38.    William Morton and Mark Mealy are members of the Buyout Group and have a direct economic interest in minimizing any merger consideration paid to Morton's public shareholders.

39.    Fred Broling is beholden to the Buyout Group, as he is party to a Voting Agreement whereby he granted William Morton an irrevocable proxy to vote all of Broling's shares in exchange for Broling becoming a director of Morton and William Morton casting the majority vote in favor of Broling's continued directorship

10

40.     The Voting Agreement was entered into on January 20, 1998, in connection with a series of corporate reorganizations whereby Morton would emerge as a publicly held company. The Voting Agreement was entered into by Fred Broling and Mark Mealy, as well as Buyout Group members Daryl Lindemann, Brian Geiger and Brian Doolittle and other members of the Company's management. Subsequent Voting Agreements were entered into with every person who was an officer of Morton or any of Morton's subsidiaries at any time after January 1998. The Voting Agreement covers not only shares owned as of January 1998, but all shares to be acquired by the officers and directors of Morton, including stock options, until termination of the agreement. Termination of the Voting Agreement will occur on January 20, 2008. Termination of the Shareholders Agreement between William Morton and Mark Mealy will likewise occur on January 20, 2008.

41.     As there are no unconflicted directors of Morton to serve on a special committee, and, as a result, Morton's public representations in its March 23, 2006 press release that the Going-Private Plan was approved by a special committee was false and misleading, and designed to give the (false) appearance that the interests of Morton's public shareholders had been appropriately were represented. Indeed, defendants have failed to disclose who served on the special committee or the powers of the committee. It appears that the "committee" was actually comprised of just one person, Fred Broling, who, as set forth above, is beholden to William Morton and the other members of the Buyout Group and cannot independently represent the Company's minority shareholders.

42      The March 23, 2006 press release is also deceptive in that it identifies all of the members of the Buyout Group except for Mark Mealy, thus presenting the false appearance that Mark Mealy, who spent 15 years as an investment banker at Wachovia Securities, Inc., was part of the $10 per share cashout when, in fact, he is part of the Buyout Group.

11

**The Termination Fee Is Unconscionably High, and Is Designed to Coerce Shareholders Shareholders to Vote in Favor of the Merger**

43. The Merger Agreement approved by the Individual Defendants has contractually bound Morton to pay a termination fee (the "Termination Fee") of $2.6 million, plus expenses of $250,000, to Brazos in the event that Merger does not obtain shareholder approval and Morton enters into an alternate merger or acquisition, even an alternate superior transaction, within the next 12 months.

44 There are 1,375,059 shares of Morton common stock that are not owned or controlled by defendants or any other of the Company's officers and directors, which translates to a deal value of approximately $13 75 million to shareholders who will not continue to own an equity interest in or be employed by the Company following the Merger. The $2 6 million termination fee is unconscionably high, as it represents nearly 19% of the deal value of the Going-Private Plan

45. Rather than provide reasonable compensation to Brazos for potential costs or lost opportunities stemming from a termination of the Merger, the Termination Fee is instead designed to ensure completion of the Merger prior to the termination of William Morton's majority control of the Company, and coerce Morton's public shareholders to vote in favor of the Merger by making it prohibitively expensive for any competing bidder to emerge with an alternative that might endanger or delay completion of the Going-Private Plan.

**The Individual Defendants Have Violated the Company's Code of Ethics**

46. Morton has adopted a Code of Ethics that is touted in its public filings with the SEC as means to help promote investor interest in the Company by portraying Morton as a highly ethical company with a comprehensive set of rules designed to avoid of conflicts of

interest with the Company's officers and directors. Indeed, in 2004, Mark Mealy was appointed as the director specifically responsible for monitoring the ethics code and practices.

47. The Code of Ethics provides a two-tiered conflict of interest provision. For Company employees in general, the Code of Ethics recognizes that conflicts arise "when an employee, officer or director takes actions or has interests that may influence his or her ability to discharge his or her duties properly or make it difficult to perform his or her work on behalf of the Company." An even higher standard is applicable to the conduct of the Chief Executive Officer (William Morton) and other members of the Company's senior management, such that these individuals must "avoid[] both real and apparent conflicts of interest between their interests and the interests of the Company."

48. The Individual Defendants have violated Morton's Code of Conduct by proceeding with the conflicted Going-Private Plan, placing their own interests ahead of the interests of the Company's public shareholders, timing the announcement of the Going-Private Plan prior disclosure of the Company's year-end financial results that include increased orders from Caterpillar and Deere, and failing to disclose material facts relating to the Going-Private Plan.

## COUNT I

### AGAINST THE MORTON DEFENDANTS FOR
### BREACH OF DUTY OF FIDUCIARY DUTY AND ENTIRE FAIRNESS

49. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

50 Defendant Morton, along with defendants William Morton, Mark Mealy and Fred Brolmg, as directors and/or officers and/or controlling shareholders of Morton (the "Morton Defendants") owe a duty of undivided loyalty to Morton's public shareholders.

13

51.     The initiation and timing of the Going-Private Plan are a breach of the Morton Defendants' duty of loyalty and constitute unfair dealing. The Merger is timed to cap the price of Morton common stock and take advantage of an artificially depressed market price for Morton stock, just as Morton is on the verge of achieving increased sales and earnings through increased demand for its products.

52.     The Morton Defendants have failed to provide any effective protection for the Class, as none of the Individual Defendants suffer from disabling conflicts of interest as members of the Buyout Group and/or parties to the Shareholder Agreements and Voting Agreements that makes it impossible for any special committee to render an independent decision that protects the interests of the public shareholders. There are no directors of Morton independent of William Morton's influence or control.

53.     The disclosure of the Going-Private Plan also reflects unfair dealing and a lack of candor. The Morton Defendants have caused materially misleading and incomplete information to be disseminated to Morton's public shareholders. Morton's statements concerning the fairness of its $10 per share offer, for example, are literally false. By misleadingly portraying the $10 price as fair, and driving a substantial portion of Morton stock into the hands of arbitrageurs who will vote in favor of the Merger, the Morton Defendants seek to ensure that most shareholders will approve the Merger.

54.     The Morton Defendants' scheme, and particularly their effort to cap Morton's stock price, was designed to drive a substantial number of Morton shareholders to sell into the market after the announcement of the Going-Private Plan raised the market price of Morton stock  After the announcement of the Going-Private Plan, numerous shareholders sold their shares based on misleading and incomplete disclosure that suggested there was no point waiting for the inevitable Merger  Arbitrageurs who purchased shares after the announcement will be

14

highly motivated to approve the Merger and achieve a modest profit, regardless of the lack of fairness of the Merger price

55      The Going-Private Plan represents an opportunistic effort to free Morton from future dealings with Morton's public shareholders at a discount from the fair value of their shares. As discussed above, the $10 per share offer price does not represent fair value.

56.     The Morton Defendants have also violated their fiduciary duties of care and good faith by approving the transactions contemplated by the Going-Private Plan, which has left Morton public minority shareholders with an ineffective and expensive appraisal remedy as their only opportunity to obtain fair value. The Morton Defendants cannot, consistent with their fiduciary duties, approve any buyout that is not entirely fair to Morton public shareholders. The Merger does not satisfy the entire fairness standard and the Morton Defendants have breached their fiduciary duties by approving such transaction

## COUNT II

### AGAINST THE BRAZOS DEFENDANTS FOR
### AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY

57.     Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

58.     Defendants Brazos and its Brazos and its MMC Precision Holdings Corp. and MMC Precision Merger Corp. affiliates (the "Brazos Defendants") have aided and abetted the Morton Defendants' wrongdoing alleged herein   The Brazos Defendants are also active and necessary participants in the Morton Defendants plan to complete the Merger on terms that unfair to Morton public shareholders, as the Brazos Defendants likewise seek to pay as little as possible to Morton public shareholders and have participated in disseminating of misleading information to Morton public shareholders in the March 23, 2006 press release, which was approved by Brazos.

15

59.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and on behalf of the Class, prays that the Court provide relief, including:

A.    Declaring this action to be a proper class action and certifying plaintiff as class representative and plaintiff's counsel as class counsel;

B    Preliminary and permanently enjoining defendants from disenfranchising the Class and effectuating the Merger;

C.    Declaring that the Individual Defendants have breached their fiduciary duty to plaintiff and the Class;

D.    Declaring the Merger void and ordering rescission if consummated,

E.    Requiring defendants to account for all shares, money and other value improperly received from Morton,

F.    Requiring disgorgement and imposing a constructive trust on all property and profits defendants received as a result of their wrongful conduct;

G.    Awarding damages, including rescissory damages, in favor of plaintiff and the Class against all defendants, jointly and severally, together with interest thereon,

H.    Awarding fees, expenses and costs to plaintiff and plaintiff's counsel, and

I.    Granting such other and further relief as the Court deems just and proper

16

Dated· March ___, 2006

CHITWOOD HARLEY HARNES LLP

By _____
        Martin D. Chitwood
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel 404-873-3900
Fax 404-876-4476

HAROLD B. OBSTFELD, P.C.
Harold B Obstfeld
100 Park Avenue - 20th Floor
New York, New York 10017
Tel: 212-696-1212
Fax: 212-696-1398

GARDY & NOTIS, LLP
James S. Notis
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel 201-567-7377
Fax: 201-567-7337

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALAN KAHN, on behalf of himself and all others similarly situated, | )<br>)<br>) |
| | CASE NUMBER. |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| MORTON INDUSTRIAL GROUP, INC., WILLIAM D MORTON, MARK W. MEALY, FRED W BROLING. BRAZOS PRIVATE EQUITY PARTNERS, LLC, MMC PRECISION HOLDINGS CORP. and MMC PRECISION MERGER CORP , | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## CERTIFICATE OF SERVICE

The undersigned. an attorney, certify that I have served the foregoing NOTICE OF REMOVAL OF CIVIL ACTION FILE NO 2006CV 114628 PENDING IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA and CONSENT TO REMOVAL upon the parties of record for the Plaintiff via Federal Express this 26th day of April, 2006.

MARTIN D  CHITWOOD
CHITWOOD HARLEY HARNES LLP
2300 Promenade II
1230 Peachtree Street, N E.
Atlanta, Georgia 30309
Tel· 404-873-3900
Fax· 404-876-4476

HAROLD B. OBSTFELD
HAROLD B. OBSTFELD, P C.
100 Park Avenue - 20th Floor
New York, New York 10017
Tel  212-696.1212
Fax· 212-696-1398

JAMES S. NOTIS
GARDY & NOTIS, LLP
440 Sylvan Avenue, Suite 110
Englewood Cliffs, New Jersey 07632
Tel: 201-567-7377
Fax. 201-567-7337

Nickolas P. T. Chilivis
Georgia Bar No. 124799

Chilivis, Cochran, Larkins & Bever LLP
3127 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 233-4171
(404) 261-2842