UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALAN KAHN, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 1:06-CV-1008-CAP |
| MORTON INDUSTRIAL GROUP, INC.; WILLIAM D. MORTON; MARK W. MEALY; FRED W. BROLING; BRAZOS PRIVATE EQUITY PARTNERS, LLC; MMC PRECISION HOLDINGS CORP.; and MMC PRECISION MERGER CORP., | |
| Defendants. | |

O R D E R

This matter is before the court on the plaintiff's motion to remand [Doc. No. 24].

Factual Background

Defendant Morton Industrial Group, Inc. ("Morton Industrial") is a Georgia corporation headquartered in Illinois. Plaintiff Alan Kahn is a minority shareholder of Morton Industrial. Defendants William Morton, Mark Mealy, and Fred Broling (collectively "Individual Defendants") are directors and shareholders of Morton Industrial. William Morton is also Morton Industrial's majority shareholder, Chief Executive Officer, and President.

Defendant Brazos Private Equity Partners, LLC is a Texas limited liability company that specializes in leveraged

acquisitions and recapitalizations. Defendant MMC Precision Holdings Corporation is a Delaware corporation organized by certain affiliates of Brazos. Defendant MMC Precision Merger Corporation is a Georgia corporation and wholly owned subsidiary of MMC Precision Holdings.

On March 23, 2006, Morton Industrial announced that it had entered into an agreement and plan of merger ("Merger Agreement") with MMC Precision Holdings and MMC Precision Merger. According to the Merger Agreement, MMC Precision Merger will be merged into Morton Industrial, and Morton Industrial will be privately owned by certain members of its senior management as well as affiliates of Brazos and other designated shareholders. Each of the existing Class A and Class B shareholders of Morton Industrial who will not have a continuing investment in the company will receive $10 in cash per share.

On March 27, 2006, Kahn filed this suit in the Superior Court of Fulton County, Georgia on behalf of himself and other public shareholders of Morton Industrial Group. Kahn claims that $10 per share is grossly inadequate and resulted from Morton Industrial and the Individual Defendants' (collectively "Morton Defendants") breach of their fiduciary duties of loyalty and good faith. The complaint also alleges that the defendants misrepresented the independence of the "special committee" assigned to review the

Merger Agreement.  Specifically, Kahn argues that the defendants are trying to coerce Morton Industrial's public shareholders to vote in favor of the Merger Agreement through fraudulent and deceptive means, including public statements[1] that falsely represent that the Merger Agreement was approved by unconflicted directors of Morton Industrial, when, in fact, there are no unconflicted directors of Morton Industrial.

Kahn's lawsuit contains two causes of action supposedly brought pursuant to Georgia law.  In the first count, Kahn alleges that the initiation and timing of the Merger Agreement constitutes unfair dealing and a breach of the Morton Defendants' duty of loyalty.  Kahn further claims that the Morton Defendants acted unfairly when they disseminated a materially misleading press release regarding the Merger Agreement.  Finally, Kahn alleges that the Morton Defendants violated their fiduciary duties of care and good faith by approving the Merger Agreement.

In the second count, Kahn alleges that Brazos, MMC Precision Holdings, and MMC Precision Merger (collectively "Brazos

---

[1] The only statement specifically identified in the complaint is a March 23 press release.  Kahn claims that the press release failed to disclose that the "special committee" that recommended the Merger Agreement was just one conflicted director.  Kahn also alleges that the press release failed to identify Mealy as a continuing investor.

Defendants") aided and abetted the breach of the Morton Defendants' fiduciary duties.

On April 26, 2006, the Brazos Defendants removed the case to this court claiming that Kahn's state law causes of action are preempted by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §§ 77p, 78bb(f) ("SLUSA").  One day later, the Morton Defendants filed joinders to the removal.  In addition to relying on SLUSA, the Morton Defendants argue that even though Kahn pled claims pursuant to Georgia law, Kahn's claims involve substantial questions of federal law.

Kahn now seeks to remand the action arguing that the "Delaware carve-out" exception to SLUSA applies and requires remand of the entire action.

## Legal Analysis

A.  The Bravos Defendants' Motion to Dismiss

The Brazos Defendants' first argue that this court should adjudicate their motion to dismiss [Doc. No. 7] before turning to Kahn's motion to remand.  The court does not believe that adjudicating the Brazos Defendants' motion to dismiss prior to reviewing Kahn's motion to remand would be reasonable or appropriate.  If the court determines that it must remand the entire action, then the court lacks authority to adjudicate the motion to dismiss since subject matter jurisdiction would be

lacking.  See Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012 (1998) (counseling against reaching the merits while an unresolved jurisdictional question exists).

The court understands and notes that many of the Brazos Defendants' arguments in their motion to dismiss are relevant to their response to Kahn's motion to remand.  To the extent that the Brazos Defendants' arguments in their motion to dismiss support their arguments in response to Kahn's motion to remand, this information has been considered by the court in the context of analyzing Kahn's motion to remand.

B.   Background Concerning SLUSA

In 1995, Congress concluded that abusive securities lawsuits were harming the nation's securities markets.  H.R. Conf. Rep. No. 104-369 at 31-21 (1995).  Congress responded by passing the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which enacted tougher procedural and substantive standards for private securities suits in federal courts.  15 U.S.C. §§ 78u-4, 77z-1.

In 1998, Congress determined that litigants were able to elude PSLRA's reach with relative ease by filing suit in state court under state securities laws.  See Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F.3d 116, 123 (2d Cir. 2003).  "PSLRA's objectives went largely unrealized due to this 'federal

flight' loophole. SLUSA was enacted to close the loophole by mandating federal court as the 'exclusive venue for class actions alleging fraud in the sale of certain covered securities and by mandating that such class actions be governed exclusively by federal law." Id. (citing 15 U.S.C. § 77p(b)-(c)). "To that end, SLUSA preempts certain state law claims, allows for removal of state actions to federal court, and requires immediate dismissal of 'covered lawsuits.'" Behlen v. Merrill Lynch, 311 F.3d 1078, 1081 (11th Cir. 2002).

C.  Removal Pursuant to SLUSA

In the Eleventh Circuit, a party seeking to remove an action to federal court pursuant to SLUSA "bears the burden of showing that: (1) the suit is a 'covered class action,' (2) the plaintiffs' claims are based on state law, (3) one or more 'covered securities' has been purchased or sold, and (4) the defendant misrepresented or omitted a material fact 'in connection with the purchase or sale of such a security.'" Greaves v. McAuley, 264 F. Supp.2d 1078, 1081 (N.D. Ga. 2003) (citing Behlen, 311 F.3d at 1081-82). "If these four elements are satisfied, then the action is properly removed, and, unless an exception applies, the action must be dismissed." Id. at 1092.

Kahn's complaint satisfies SLUSA's removal requirements. First, the action fits SLUSA's definition of a "covered class

action"[2] because Kahn seeks to recover damages on his own behalf and on behalf of all holders of Morton Class A common stock who are being and will be harmed by the defendants' actions.  Kahn further alleges that common questions of law and fact predominate over questions affecting individual class members.

Second, the face of Kahn's complaint asserts only claims allegedly based on Georgia law.  For example, Kahn alleges a breach of fiduciary duty claim and an aiding and abetting breach of fiduciary duty claim.

Third, this action is brought in connection with the sale of covered securities under SLUSA, because shares of Morton Industrial stock are publicly traded on the OTC Bulletin Board.  Finally, Kahn alleges that the defendants misrepresented or omitted material facts in connection with the purchase or sale of covered securities.  In particular, Kahn alleges that the Morton Defendants issued a March 23, 2006, press release for the purpose of coercing shareholders to vote in favor of the Merger Agreement.  According to Kahn, the March 23 press release was false and misleading

---

[2] A "covered class action" is defined as any single lawsuit in which "damages are sought on behalf of more than 50 persons or prospective class members and questions of law or fact common to those persons or members of the prospective class . . . predominate . . . ."  15 U.S.C. § 77p(f)(2)(A)(i)(I).

because it suggested that unconflicted directors approved the Merger Plan, when, in fact, there are no unconflicted directors.[3]

Because Kahn's complaint meets all four requirements of SLUSA's preemption test, the court concludes that Kahn's claims are preempted by SLUSA. Thus, removal was proper.

C. <u>Remand Under the Delaware Carve-Out</u>

Because Kahn's complaint is removable under SLUSA, the court must dismiss the complaint, unless an exception preserves Kahn's claims. 15 U.S.C. § 77p(b),(d). If the court determines that a claim is "preserved" under an exception to SLUSA, then SLUSA requires remand to state court. 15 U.S.C. § 77p(d).

The parties vigorously contest whether this action should be dismissed or remanded. Kahn argues that the claims against the Morton Defendants satisfy an exception to SLUSA known as the "Delaware carve-out," and therefore, the lawsuit, in its entirety, should be remanded to state court. The defendants, on the other hand, argue that the claims against the Bravos Defendants do not satisfy the Delaware carve-out, and, therefore, this court should

---

[3] In his motion to remand, Kahn suggests that his claims against the Brazos Defendants are not preempted by SLUSA because he did not allege that the Brazos Defendants made misrepresentations. The face of Kahn's complaint, however, alleges that the Brazos Defendants "have participated in disseminating of [sic] misleading information to Morton public shareholders in the March 23, 2006, press release, which was approved by Brazos" [Doc. No. 1 at ¶ 58]. Thus, Kahn's claims against the Brazos Defendants meet the fourth requirement for SLUSA preemption.

exercise jurisdiction over the entire action.  In addition, the Morton Defendants suggest that Kahn's claim against Morton Industrial does not satisfy the Delaware carve-out.

The Delaware carve-out requires the court to remand certain "covered class action[s] . . . based upon the statutory or common law of the state in which the issuer is incorporated." 15 U.S.C. §§ 77p(d)(1)(A), 77p(d)(4).  In relevant part, the Delaware carve-out preserves actions that involve: (1) a recommendation or other communication with respect to the sale of securities of the issuer, (2) that is made by or on behalf of an issuer or an affiliate of the issuer, and (3) concerns decisions of equity holders with respect to voting their securities.  15 U.S.C. § 77p(d)(1)(B).

Applying this statutory language to Kahn's claims against the Morton Defendants, the court finds that Kahn's claims are preserved by the Delaware carve-out, and therefore, must be remanded to state court.  First, Kahn's claims against the Morton Defendants are based on Georgia law, the state in which the Morton Industrial, the issuer, is incorporated.

The Morton Defendants, however, argue that the first element of the Delaware carve-out test has not been met because the Georgia law does not state a claim against Morton Industrial for breach of fiduciary duty.  In particular, the Morton Defendants argue that

Georgia law does not recognize a claim for breach of a fiduciary duty against a corporation.

The court disagrees with the Morton Defendants' analysis. The face of the complaint asserts a claim supposedly based on Georgia law. Whether Kahn's claim is viable under Georgia law is a determination that should be made by the Superior Court of Fulton County on a motion to dismiss. Furthermore, even assuming the Morton Defendants are correct and Kahn's claim against Morton Industrial is not viable, Kahn's Georgia law claims against the Individual Defendants would remain pending. Notably, the Morton Defendants do not suggest that these claims are unfounded.

Kahn's claims against the Morton Defendants also meet the second element of the Delaware carve-out. Kahn's claims center upon the Morton Defendants' March 23 press release. It is undisputed that this document constitutes a "communication" with Morton Industrial shareholders regarding the sale of Morton Industrial securities pursuant to a merger agreement. 15 U.S.C. § 77p(d)(1)(B)(ii).

Next, the Morton Defendants' March 23 communication was directed to Morton Industrial shareholders. Accordingly, the third requirement, that the communication be "made by or on behalf of the issuer . . . to holders of equity securities of the issuer," is met. 15 U.S.C. § 77p(d)(1)(B)(ii)(I).

Finally, Kahn alleges that the Morton Defendants' communications were intended to encourage Morton Industrial's shareholders to approve the proposed merger agreement. Thus, the last element of the Delaware carve-out exception is fulfilled, as the claims "concern[] decisions of [Morton Industrial] equity holders with respect to voting their securities." 15 U.S.C. § 77p(d)(1)(B)(ii)(II).

Because Kahn's claims against the Morton Defendants satisfy the Delaware carve-out, Kahn is entitled to maintain those claims in state court, and SLUSA requires this court to remand Kahn's claims against the Morton Defendants. 15 U.S.C. § 77p(d)(4) ("In an action that has been removed from a State court pursuant to subsection (c), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court.").

Although Kahn's claims against the Morton Defendants are preserved, Kahn's "aiding and abetting" claim against the Brazos Defendants fails to meet the requirements of the Delaware carve-out. In particular, the "aiding and abetting claim" does not satisfy the requirements of the Delaware carve-out because the Brazos Defendants are not the issuers of Morton Industrial's stock or affiliates of Morton Industrial.

11

D.   Remand or Dismiss

The complicating factor in this case is that, as described above, the claims against the Morton Defendants are preserved by SLUSA because they fit within the Delaware carve-out. The claims against the Bravos Defendants, however, do not fit within the Delaware carve-out. Because some of Kahn's claims are preserved, but others are not, the parties disagree as to the proper treatment of this lawsuit.

The issue of whether the court should remand the entire case back to state court when one of the claims is subject to the Delaware carve-out exception and one of the claims is not was recently addressed by the Northern District of Georgia in Greaves, 264 F. Supp.2d at 1084-85. The Greaves court held that SLUSA does not draw a distinction between various claims alleged in a complaint. Thus, if the Delaware carve-out applies to even one claim, the Greaves court reasoned that it must remand the entire action to state court.[4]  Greaves, 264 F. Supp.2d at 1085.

In reaching its decision, the Greaves court relied on the plain language of SLUSA. In particular, the court pointed out that

---

[4] According to Greaves, the plain language of SLUSA requires the court to consider the propriety of remand after determining the propriety of removal. Greaves, 264 F. Supp.2d at 1085. "If remand is appropriate, the entire lawsuit must be returned to state court, irrespective of the court's decision regarding removal. As such, the remand provision trumps the removal provision, and the entire lawsuit must be remanded." Id.

12

SLUSA speaks in terms of "covered class actions." For example, under SLUSA, a "covered class action" is removable to federal court, and, once the Delaware carve-out applies, the court must "remand such action." SLUSA explicitly defines a "covered class action" as "any single lawsuit" or "any group of lawsuits." Because SLUSA does not make a distinction between various claims alleged in the complaint, but instead requires remand of an "action," which is defined as a "single lawsuit," the Greaves court held that SLUSA requires remand of the entire action if any one claim falls within the Delaware carve-out. Id.

Although the defendants recognize that the Greaves case addressed facts nearly identical to the facts presented to the court in this case, the defendants urge the court to reconsider Greaves. Noting that the Greaves decision never reached the Eleventh Circuit, the defendants argue that the Greaves decision is contrary to Congressional intent. They also argue that the Greaves decision is contrary to the United States Supreme Court's decision in Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, __ U.S. ___, 126 S. Ct. 1503 (2006).

The court agrees with the reasoning of the Greaves court, including its discussion regarding Congressional intent. Greaves, 264 F. Supp.2d at 1085. Moreover, contrary to the defendants' arguments, nothing in the United States Supreme Court's Dabit

decision merits a different result. <u>Dabit</u> held that SLUSA applies broadly to preempt state-law class actions brought by holders of securities, as well as purchasers and sellers of securities. <u>Dabit</u>, 126 S. Ct. at 1503. It did not address the scope of the Delaware carve-out.

Accordingly, because the claims against the Morton Defendants are preserved by the Delaware carve-out, the court must remand the entire cause of action, including Kahn's "aiding and abetting" claim against the Bravos Defendants to the Superior Court of Fulton County. 15 U.S.C. § 77p(d)(4).

E.  <u>Substantial Federal Question</u>

Notwithstanding the dictates of SLUSA, the Morton Defendants argue that this court has subject matter jurisdiction over Kahn's claims because his claims involve substantial questions of federal law that create federal jurisdiction.[5]

The court disagrees. The rules for determining whether a controversy "arises under" federal law are well-settled. Under the "well-pleaded complaint" rule, a dispute involving federal law must

---

[5] The Morton Defendants also argue that Georgia does not recognize a cause of action for breach of fiduciary duty brought against a corporation, nor does Georgia recognize a cause of action for "aiding and abetting" breach of fiduciary duty. Once again, "it is not for this court to assess whether [Kahn's] complaint presents a viable cause of action under Georgia law. Instead, that determination is better made by a Georgia court on a motion to dismiss." <u>Greaves</u>, 264 F. Supp.2d at 1087.

14

appear from the face of the plaintiff's complaint; neither the defendants' answer, nor their petition for removal may be used to establish federal question jurisdiction.  See Gully v. First National Bank, 299 U.S. 109, 113, 57 S. Ct. 96, 98 (1936). Similarly, an action does not arise under federal law if the federal question enters the case only by way of a defense, even if introduction of a federal question is a certainty rather than a mere possibility.  Id.  As such, in determining if a federal question exists, a district court will only consider what necessarily appears in a plaintiff's statement of his or her claim. See Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 9-10, 103 S. Ct. 2841, 2846 (1983).

    The court declines to accept the Morton Defendants' arguments that a substantial federal question exists such that federal subject matter jurisdiction is appropriate.  Kahn, as the master of his complaint, pled only state common law claims in order to ensure a state forum.  The court refuses to convert these state law claims into federal questions.

F.   Sanctions

Having determined that this case should be remanded, the court next addresses Kahn's request for attorney's fees and costs. Under 28 U.S.C. § 1447(c), the court may require the removing party to pay the plaintiff's just costs and actual expenses, including attorney's fees, incurred as a result of the removal. Any award of attorney's fees under this section is, however, completely discretionary. Graham Communications Realty, Inc. v. Shamsi, 75 F. Supp.2d 1371, 1373 (N.D. Ga. 1998).

While the court finds that it lacks jurisdiction over this action and grants Kahn's motion to remand, the court does not find that attorney's fees and costs are warranted here. Thus, Kahn's motion to remand [Doc. No. 24] is denied to the extent that Kahn requests attorney's fees and costs.

## Conclusion

For the reasons discussed above, the court GRANTS Kahn's motion to remand [Doc. No. 24] to the extent that the motion requests that the court remand this action to state court. The court, however, DENIES Kahn's motion [Doc. No. 24] to the extent that Kahn requests his attorney's fees and costs incurred in filing the motion. The court REMANDS this action to the Superior Court of Fulton County, Georgia, where it was originally filed.

This court has no jurisdiction to resolve the remainder of the motions pending on the docket [collectively, Doc. Nos. 7, 25, and 27], and the court expresses no opinion thereon.  Instead, these matters must be resolved by the Superior Court of Fulton County.

SO ORDERED, this 23rd day of June, 2006.

/s/ Charles A. Pannell, Jr.
CHARLES A. PANNELL, JR.
United States District Judge